We'll hear argument first this morning in Case 12-562, United States v. Woods. Mr. Stewart. Mr. Chief Justice, and may it please the Court, the merits question in this case is whether the substantial valuation misstatement penalty applies when a taxpayer overstates his basis in property in connection with a transaction that is later determined to be a sham. The threshold jurisdictional question is whether the Court in this TEFRA partnership-level proceeding has authority to decide that merits issue. I'd like to begin with the jurisdictional question, and before I focus the Court's attention on the text, I'd like to make two quick preliminary observations about jurisdiction. The first is that the question we say is appropriate for resolution in partnership-level proceedings is not whether any individual partner will actually be made to pay the penalty. There's no question in this case that the determination whether the penalty will actually be imposed on individual partners, and if so, in what amount, is properly reserved for partner-level proceedings. The question is simply whether the Court in the partnership-level proceeding can make the threshold determination whether the sort of error that the IRS identifies on the partnership return can trigger a penalty down the road if the individual partner prepares his or her return in a manner consistent with the partnership return. Sotomayor Excuse me. I thought I understood that to be your point in your brief. But I — there is one thing missing from here. I also thought you were saying that you could impose the penalty before the amount was determined on the partnership level, that the tax that you could without a notice of deficiency require a payment up front. There are two separate questions here. The first is what can be determined at the partnership level. And once the partnership-level proceedings are complete, there are subsidiary partner-level proceedings. And some partner-level proceedings require a deficiency notice. Some partner-level proceedings do not. Now, it is part of our position that once the applicability of the penalty has been determined at the partnership level, the penalty can then be imposed on individual partners in partner-level proceedings without a deficiency notice. It can still be challenged through a refund proceeding. But because there is never the imposition of additional tax or penalties on the partnership itself. Sotomayor, that is the incongruity of your position, in my mind. You claim that the decision of whether or not or what the true value is of the basis and how much needs to be paid can't be determined until the partnership level — until the partner-level determination. Yet you are claiming that you are entitled to an amount of money beforehand, before that decision is made. There is a tension in my mind about that. Let me explain as best I can the sequence of events that we think would unfold if this Court affirmed our view of the — both held that the courts below had jurisdiction and agreed with our view of the way the penalty is supposed to operate. If the Court agreed with the position that we take in Part 2 of our merits brief, namely, that a deduction that is claimed in connection with a transaction that is later determined to be a sham can trigger the — if they agree — if you agree with us on that legal issue, then the IRS would examine the returns of the individual partners, and it would verify that they did, in fact, claim deductions in connection with this transaction because they would have this Court's agreement with the proposition that that's the sort of thing that can trigger the penalty. They would then determine what the amount of the overpayment — of the underpayment was, and they would presumably assess a 40 percent penalty on that. There would be a subsidiary question because the FPA, the Final Partnership Administrative Adjustment, said that the partnerships were shams, but it also said that the individual transactions, the purchases and sales of the options and the currency and the stock, they would be treated as though they had been engaged in by the individual partners. And so at the partner level, there might be further determinations about what a relatively small amount of tax the individual partners would owe on that. And then if a partner — if a penalty were assessed on the partner, the partner would have to pay the penalty before challenging it in — through a refund action. But we might want to ask, on what ground could the partner want to challenge the penalty at that point? The partner couldn't at that stage want to make the argument that's being made in this Court, namely, that this is just not the sort of situation to which the substantial valuation misstatement penalty applies, because that issue would have already been resolved against the partner in this proceeding by hypothesis, if the Court agrees with us on the merits. And so the partner would have had an opportunity to get that threshold legal issue resolved without prepaying the penalty first. Now, if an individual partner wanted to raise the good-faith reasonable cause defense that's provided in 26 U.S.C. 6664C, the partner would have to pay the penalty first before seeking a refund. But that's pretty clearly consistent with Congress's intent, because Congress specified in TEFRA itself that after the court in the partnership-level proceeding has determined the applicability of the penalty, the partner can still, through refund proceedings, contend that the penalty was erroneously imposed. And that language tells us two things. It tells us, first, that Congress didn't see any necessary unfairness in requiring a partner to pay the penalty first before raising certain sorts of challenges. And it also indicates that by applicability, Congress must have meant something different from will the penalty ultimately be imposed, because if the partnership-level determination that the penalty was applicable meant that all the requirements for imposition were satisfied, there would be no room for the partner to argue down the road that the penalty was erroneously assessed after all.  Ginsburg, if the partnership-level proceeding is known first to a position that the proper review is of the final partnership administrative adjustment, how would the penalty be adjudicated in that format? And if your – if the taxpayer is right that the adjudication must be made at the character of the adjudication? When we say that the applicability of the penalty should be determined in the partnership-level proceeding, all we mean is that the court in the partnership-level proceeding should resolve the legal issue that is addressed in Part 2 of the respective briefs for the Petitioner and the Respondent. That is, the court should determine, is the substantial valuation misstatement penalty the sort of penalty that can apply to a basis overstatement that is produced through a sham transaction? We wouldn't ask the court in the partnership-level proceeding to go beyond that legal determination and to ask whether individual partners had actually underpaid their tax or whether they had actually misstated basis. It's always theoretically possible in a case like this that the partnership could be determined – that the partner could participate in sham transactions, but by the time it was – he had to file his own return, he could get cold feet or he could get legal advice that indicated this just isn't going to work. And so it's possible that the partner could prepare his return in a way that was lawful. And the IRS, after the partnership-level proceedings were complete, would have to look at the partner return in order to see what that had – what had happened. I think the main practical – I'm sorry. Scalia, I was just going to ask, if the question were determined of whether the sham transaction counts as an erroneous statement of the basis, if that were determined at the partner level and not in a partnership proceeding, would it be possible to have different outcomes? Yes, absolutely. With respect to different partners? Absolutely. And I think that's the main practical difference between the way the system would operate under our view of TEFRA and the way it would operate under Respondent's view. That is, under Respondent's view. And you would have to relitigate the same issue. Exactly. That under Respondent's view, the IRS was not required to say anything at all in the FPA about the potential imposition of basis overstatement penalties down the road. If the FPA adjustments that the shamming determination had been upheld at the partnership level, under Respondent's view, the IRS could then assess penalties against individual partners, and if the individual partners raised in objection the same arguments that are raised in Part 2 of the Respondent's merits briefs, that would have to be litigated potentially by different judges in different partnership level, in different partner level proceedings with potentially inconsistent outcomes. Would it be a fair way to look at this to say that what you do at the partnership level is anything that doesn't require looking at an individual's tax return? I think that's a fair way to put it, and another way we would put it is, any question that will necessarily have the same answer for all partners should presumptively be resolved at the partnership level. That is, the legal issue that's briefed in Part 2 of the parties' respective merits briefs, we may be right, Respondent may be right, but the answer is going to be the same for all partners. Either this is the sort of basis overstatement that can trigger the penalty or it isn't. The second practical difference that I wanted to allude to at least briefly between our position and the Respondent's is that 6226F is the provision that deals with the court's jurisdiction in a partnership level proceeding. 6221 is the provision that tells the IRS what it's supposed to do at the partnership level. And it also tells the IRS, determine the applicability of any penalty that's related to an adjustment to a partnership item. Now, one advantage of requiring the IRS to make at least this sort of threshold of determination of penalties at the outset is that if the IRS makes an adjustment to a partnership item and the IRS believes that it is the sort of adjustment that down the road could trigger the imposition of penalties, that's the sort of thing an individual partner would want to know in deciding whether to challenge the adjustment. Alitoso, is it correct that your position would allow the IRS to evade the normal statute of limitations? I don't see. I don't see how. I'm not sure exactly what argument you're referring to, but there are – I mean, there are provisions that deal with the way the limitations periods runs depending on when the partnership return is filed and when the partner returns are filed, but I don't see how that would happen. We would still be subject in assessing penalties against any individual partners to whatever limitations period the Code provides. And either we would or would not have obtained a legal ruling on the legal issue, whether the penalties are the sort that could follow from this partnership item adjustment, but I don't think it would have implications for the statute of limitations. Using the language of the statute that you just quoted, can you explain to us what is the adjustment of the partnership item? That is, the statute says to determine the applicability of any penalty which relates to the adjustment of a partnership item. So what is – what was the partnership item adjustment? Yes, Justice Ginsburg. This is on page 6A of the appendix to the government's brief, and the adjustment to the partnership item is the shamming determination, the determination that the partnerships were not engaged in for business purposes, that they were engaged in purely as tax avoidance measures. And Respondent concedes that this is a partnership item, because Respondent concedes that the district court had authority to review the shamming determination, decide whether that determination was appropriate. And that concession necessarily depends upon the proposition that the determination that the partnerships are shams was an adjustment to a partnership item. And it makes sense for two reasons. First, because the determination whether these are valid partnerships necessarily underlies any other determination that the IRS would make about the proper tax treatment of items reported on the partnership return. And second, it is the sort of determination that is going to have one answer for every partner. Either the partnership is a sham or it's not, but it can't be the case that a particular partnership is a sham with respect to some partners and not others. Roberts What Judge Sentel said in his opinion for the D.C. Circuit is that based on agreeing with everything you've said, that means that the misstatement of basis might be obvious on the individual partner's returns. What's wrong with it might be obvious, but it still is made on those returns, and therefore that doesn't fall as a partnership item. Now, we would agree with Judge Sentel that outside basis in and of itself is not a partnership item, and outside basis in and of itself is not designated as one of the things that the court in a partnership-level proceeding can determine. And usually it would be inappropriate to determine outside basis at that stage, because typically outside basis will vary from partner to partner. But there are some instances in which a court needs to determine outside basis. Scalia Excuse me. Why would it vary from partner to partner? Roberts I mean, in the more typical case, the outside basis would depend upon the amount that a particular partner had paid for his own partnership interest. And so in that situation, not every partner would necessarily have paid the same thing. But there are fairly rare situations in which, in order to make some determination that is specified in 6226F, the court and the IRS along the way have to determine outside basis. And one example we gave on page 32 of our brief, we have a footnote that says it's not implicated here, but outside basis is sometimes a component of a partnership item such as inside basis. And we cite a case that was ultimately decided by this Court, but it's a case in which a partnership took advantage of code proceedings that said you can step up your inside basis to match the outside basis of your partner. Kennedy But isn't it your position in this case that outside basis in this case is necessarily related to inside basis? Or am I misstating you? Stewart I think what we are saying is in order to determine whether the substantial valuation misstatement penalty would be triggered down the road, the IRS and the court would have to make certain determinations, would have to decide what is the proper outside basis in a sham partnership. If a lawyer were asked for or if a lawyer saw an adjustment that said we regard these partnerships as shams and the lawyer were asked, does that mean that I could be subject to the substantial valuation misstatement penalty if I reported deductions on purported losses from that partnership? The only way the lawyer would answer that question is to ask, well, what's true basis in a sham partnership? Kennedy But if we were to write an opinion which says, an opinion ruling in your favor, that in this case outside basis is necessarily related to inside basis in this transaction, you would say that's wrong? Stewart I wouldn't put it that way. I mean, I think in this case Kennedy Why? And why is that? Stewart Because I think that's not really the reason we're saying the court needs to — I pointed the court to a different case in which outside basis had to be determined at the partnership level for a different reason, namely because it was a — in that case, it was a component of inside basis, and since inside basis is a partnership item, you can only determine that partnership item by reference to outside basis. Here we have a somewhat different argument. We're saying the thing that had to be determined at the partnership level was the applicability of the penalties, and the only way you can decide whether the substantial valuation misstatement penalty is applicable is to determine what would be true basis in a sham partnership. Ginsburg Mr. Stewart, if we go over to the merits, if this case came up today, and today we have a penalty that wasn't there originally, and that is for a non-economic substance penalty, would the government today be going under that non-economic substance penalty, or would it be going under the 662b3, that is, the substantial valuation misstatement? Or is it the government's option? It can pick one or the other. Stewart I think it's the government's option, and if you — it may be helpful to look at page 18a of the appendix to the Respondent's brief, because that actually reproduces the current version of the code that contains the 2010 penalty that you're referring to. Ginsburg If the government could choose either one, what would determine its choice? Stewart I mean, in some instances, the government will pick the one that it thinks is easiest to prove. Some of the penalties are limited to 20 percent, whereas some can be bumped up to 40 percent, and we would look for the 40 percent penalty. But if I could, on page 18a, we're talking about section 6662b, and it says, And then it lists six items. Subsection 3 is the substantial valuation misstatement penalty that we're relying on here. Subsection 6 is a disallowance of claim tax benefits by reason of a transaction lacking economic substance. That's the 2010 penalty. Now, the two points I'd make are, first, it's very clear that many, many cases that would fall under subsection 6 would also fall under subsection 1 or 2. That is, they could involve negligence or disregard of rules or regulations. They could also involve a substantial understatement of income tax, which basically means any understatement of income tax that's 10 percent or more of the true tax owed. And so if there's no incongruity in saying subsection 6 should apply to some cases where 1 and 2 would also apply, there shouldn't be any greater incongruity in saying it can apply to some cases where subsection 3 would apply. The other point I would make pertains to the introductory language of that provision, and it says, This section shall apply to the portion of any underpayment which is attributable to one or more of the following. And I think the primary practical significance of the one or more language is that it functions as an anti-stacking provision. It tells you it doesn't matter whether your underpayment triggers only one of these penalties or all six of them. You're still limited to 20 percent, unless you can get the 40 percent through some other provision. So we can't take advantage of the fact that the penalty that more than one penalty applies to a particular transaction by getting 20 percent on top of 20 percent on top of 20 percent. But the very fact that Congress used that language, which is attributable to one or more of the following, indicates that it anticipated situations in which particular underpayments would be attributable to more than one of those penalties. It didn't see any anomaly in the idea that a penalty that triggers subsection 3 could trigger subsection 1 or 2. And again, there's no reason to think that there's a greater anomaly with respect to subsection 6. The other thing I would say is that in this case, 3 and — if it arose in connection with a transaction that occurred today, 3 and 6 would be coterminous. Either of them would apply. But there will be plenty of cases in which a substantial valuation misstatement penalty, on our view, could be triggered by a legal error in computing basis, such as use of the wrong depreciation rate. That would not be the case. Roberts, Mr. Stewart, if I could focus at a somewhat higher level of abstraction. I understand the general underlying thrust of your friend's position to be that overstatement of basis goes to, you know, miscalculations, it was actually $20,000, you say it's $40,000, and that's where the penalty comes from. Well, this case is quite different, where you're kind of wiping out the whole transaction. And then you're kind of artificially saying, well, if you wipe out the whole thing, when you come to basis, it should be this and that. And it's not sort of a mis- or fraud or misstatement with respect to the basis itself. It follows from a broad sham determination, and that sham determination is made at the partnership level, not the partner level. I guess the two things that — or at least two things I would say in response to that are that here the whole point of the avoidance scheme was to create an artificially inflated basis, that is, the high, high basis that's claimed on the individual's returns was not simply a fortuitous result of an avoidance scheme that operated through some other means. The whole point — if you want to claim a loss on a transaction where you didn't incur an actual economic loss, you can do it either by under — by understating the amount that you were paid for the asset or by overstating your basis. And this is one of a number of tax avoidance schemes that operate by overstating basis. So it's true that the transaction was determined to be a sham, but the sham determination was intimately bound up with the fact that the whole purpose of the scheme was to create an inflated basis. Roberts. I understand it, but if you were telling people what happened here, maybe you would. I don't know that your first statement would be they overstated their basis. I think you would say they engaged in a completely sham transaction, which had some obvious, as the D.C. Circuit put it, some obvious consequences, but still the driving determination was that it was a sham transaction. I guess the other couple of points I would make are there's nothing illegal about engaging in a transaction that lacks economic substance. That is, if the partners had engaged in these offsetting currency transactions but then had decided before filing their return that either we no longer believe that this is right conduct or we believe we're going to get caught, and they had prepared their returns in a lawful way, nothing bad would have happened to them. The thing that subjects them to potential penalties is the fact that they claimed a large loss on their tax returns, and they did that by claiming a large false basis in the partnership. The second thing I would say is, you know, when I took math in junior high and high school, the teacher would always tell us to show your work. When you handed in an assignment, don't just give the answer at the end. Indicate the process by which you arrived at that number. And in essence, when the Code says impose penalties on underpayments that are attributable to the following things, it says it means we're going to look at your work. When we determine that you have paid too little tax, we're going to look at the calculation process by which you arrived at the amount on your own return and figure out where you went wrong. And if they did that here, they would say the mistake these taxpayers made, the reason that they didn't pay as much tax as they owed, was not that they claimed to have sold the assets, was not that they claimed to have sold the assets for less than they actually realized. It was that they claimed a basis that had no founding in reality. And the last thing I would say in connection with that is it's no accident that this scheme operated through the creation of sham partnerships. That is, if the taxpayers themselves had bought the offsetting long and short currency options, there would have been no colorable argument that they could have claimed the cost. Sotomayor, what is this case a fight about? And I'm sorry. Perhaps I'll just ask it on rebuttal, so you can save your time for rebuttal. Thank you, counsel. Mr. Garre. Thank you, Mr. Chief Justice, and may it please the Court. On both jurisdiction and the merits, the government is asking this Court to adopt an overly expansive interpretation of the code to reach a result that would upset the statutory scheme devised by Congress and lead to further problems down the road. Now, on jurisdiction, I think the most important thing for the Court to recognize is that outside basis, the very thing, as you can tell from my friend's arguments on the merits, that the imposition of this penalty depends on is not a partnership item. In fact — Mr. Garre, it seems as though you and the government agree on sort of the nature of this problem, right, which is you have a partnership item, which is the sham determination, that leads to an adjustment in outside basis, which, as you just said, is not a partnership item, is instead an affected item, and that leads to a penalty, right? So there's kind of three things, two steps in the process. And you say, well, that's not enough, essentially because the penalty has to directly relate to a partnership item. And they say it is enough because it's okay if it indirectly relates to the partnership item. And I guess the question is, in some sense you're both adding adjectives to the statute. You add directly, they add indirectly. How do we pick between those? Garre, I think the government is asking the Court to add a great deal more than that. And just to go to the statutory text, with the provision, it's 6226, and it's on page 2a of the red brief. And what that says is at first it gives the Court jurisdiction to determine all partnership items. Everybody agrees that outside basis is not a partnership item. And then it gives jurisdiction to the Court to determine penalties that relate to partnership items. And what the government is asking this Court to do is essentially to read this to say that relates to partnership items or that relates to nonpartnership affected items, like outside basis. And the reason why the Court shouldn't do that is, first, in a scheme that divides the world into partnership items that can be determined at the partnership level and nonpartnership items that must go to the partner level, when Congress says partnership item, that's significant. It has defined terms of nonpartnership item or affected item. It said partnership item. So we think that it necessarily excluded nonpartnership affected items here, and that's the way to read it. And second, if you read the relates to as broadly as the government says, then it makes no sense. The partnership item here might as well say affected item, because you're right, at some level of abstraction you can always say that the penalty relates to the partnership item. That's going to be true for lots of these. Scalia But it doesn't just say partnership items. Yes, a court in which jurisdiction, a petition is filed shall have jurisdiction to determine all partnership items. But then it goes on. The proper allocation of such items among the partners and the applicability of any penalty addition to tax or additional amount which relates to an adjustment to a partnership item. You're right, Justice Scalia. And what can that possibly mean when you're talking about the applicability of any penalty? Well, let me tell you, Justice Scalia. That penalty is going to be applicable at the partner stage. Justice Scalia, let me answer it this way. Partnerships can do many things, just like individuals and corporations, and they can engage in things that subject or that trigger penalties. A partnership can misreport its income. A partnership can make a valuation misstatement. A partnership can engage in negligence. And the Court can determine those, the applicability of those penalties. Now, it's true that down the road in a mathematical adjustment, the Court is looking to whether or not the partner repeated that error on its return. But what's fundamentally different about this case is the penalty depends not on the partnership, just the partnership item. It depends on this outside basis determination that a court can't make. I mean, to put it another way. Kennedy, are there cases in which the partnership is liable for a penalty?  Kennedy, are there cases in which the partnership does something that's a sham, that's a fraud, and then files a partnership information return with that information, but then the partners find out, either because of a ruling of the court that is void or because they have second thoughts that they're not going to do that, so they change their individual or they change their own tax return? Could there be any penalty against the partnership in that instance? Your Honor, the partners don't actually – the partnership does not pay the penalty, but the partner thinks the partnership can't. Kennedy, could there be any penalty against the partners in that instance that I put in? No, I don't believe so. But the partnership. Would there be a criminal liability for filing a false information return? I mean, ultimately, I think that would trickle down to the partners. But, Your Honor, I think there are two different schemes here. One is where the partnership is doing things that actually does trigger the penalty. Take the 2010 non-economic substance transaction. And that just fortifies the point that Justice Scalia made, that applicability of the penalty is always going to relate to the partners. Yes and no, Your Honor. Yes in the sense that ultimately what you're looking in the proper proceeding is to determine whether or not the partner repeated the error that's on the partnership return. But you can say at the partnership level that a penalty is applicable, because everything is complete, all the elements can be determined, the partnership has misreported its income. In this case, you just can't say that, because outside basis isn't reported anywhere at all on the partnership. So you would have to say that. Breyer. So what? That is, I mean, as I understand it, you agree that on the partnership level, the IRS could say the following in a hypothetical I'll now give you. The partnership says that this asset has a basis of $10 million. We sold it for 8. Therefore, the partnership has a loss of 2. The IRS says the real value was not $10 million basis, it was a $2 million basis. And therefore, in fact, you don't have a loss of 2, you have a gain of 8. Moreover, your understatement was more than 400 percent or whatever the percent is. You know, it was a huge, it was $8 million overstatement. And therefore, penalties of 400 percent attach. Okay? You agree they can say that? At the partnership level, because you're talking about inside basis, not outside basis. Correct. I understand you're making this, but what they've actually done there, since it doesn't say anything about inside, outside, is they're saying, partners, to the extent that you use this on your own return, remember, there's a 400 percent penalty attached. Okay. You agree they can do that? Now, what they've done here is they've said there is no partnership. So to the extent that you use this as your, as a basis, as you use this on your individual return, remember, there's a 400 percent penalty attached, because 4 times 0 or whatever it is, you understand the mathematics. So we haven't got any reference to inside, outside basis here. In both cases, it seems to me they're doing roughly the same thing. And so where in the statute does it say they can't do it? They're saying, indeed, a penalty attaches to the use of this partnership by you, the partner, to reduce your taxes. Not to the extent you don't use it, of course. You don't have to pay anything. But to the extent you use it, you have to pay whatever it is, plus the 400 percent. What the Court in doing, what the Court is doing in both of those situations is fundamentally different. In one case, it's looking at the partnership return, looking at how the partnership reported the basis, and determining that the basis overstatement penalty would apply because of the error committed by the partnership. That is everything that we think the Court can do under the statutory provision we just referred to. It can determine the applicability of that penalty because it relates to a partnership item, the partnership's statement of its income or basis on the partnership return. Now, what's happening here is the partner, the penalty is applying to the partner's statement of basis. That outside basis doesn't appear anywhere.  Breyer. The question is this. The question is, do the words partnership item in the section, scope of judicial review, refer only to those items that the partnership, in fact, is concerned with, or do they consider the partnership itself? Right. And the three circuit courts that have addressed that have agreed with us. And as Justice as Judges. But we're interpreting the word partnership items in that statute, and you're saying the partnership itself is not a partnership item. No, not at all, Your Honor. What, no? What we're saying is outside basis is not a partnership item. Oh, no, no, but outside basis, that's just a question of how they use it on the return. There are many ways in which a person could use a partnership item on the return. If this is a partnership item, I mean, a person might, for example, have no tax. In which case? I think the confusion maybe is between the statement at issue here. The statement at issue in this case is the basis that the partners reported on their individual returns as a result of these transactions. If you go to the partnership return and go to page 169 of the joint appendix, and it may be difficult to find now because of these foldouts, but you'll find what the partnership reported, and it reported all of the transactions at issue, and it reported accurately gains and losses. Breyer, excuse me, I'm genuinely confused. I've read this several times. Right. And the reason that I'm confused is this, that I understand your difference between the outside basis and the inside basis. Now what I'm trying to do is to figure out via the statute, I think, like what Justice Scalia was trying to do, I think, where does that matter? Well, it matters in the scope of jurisdiction, Your Honor, and again, I mean, this is. No, I understand that, too. I'm just trying to get the precise words of the statute that it would make a difference, because in common sense it doesn't seem to me to make much difference, but it may be in this statutory language it does. So I want to know what words. The words that matter is partnership item. This is a statutory scheme that talks about nonpartnership items and partnership items. Okay. Now you just told me I said that, I thought, and you said, no, it didn't. Those weren't the right words. But if you say those are the right words, then explain to me why a partnership item cannot include a partnership itself. The partnership item, Your Honor, can include the partnership. We're not disputing that part of the sham determination. My point is that the imposition of the penalty depends on an additional determination, which is a nonpartnership item. And in that sense, Mr. Garre, it strikes me as wrong to say that the words in dispute are partnership item. Actually, everybody agrees what partnership item means, what it includes, and what it doesn't include. It doesn't include outside basis. The government is perfectly happy to concede that. It seems as though the words in dispute are what does relate to mean. And does relate to have to be relate to in this very direct way that excludes this intermediate step of adjusting outside basis. Garre, and the reason why, and I think that gets back to partnership item, because if you read relates to in the broad sense that the government is asking you to read it, then in essence you are adding, you're taking away the limitation of partnership item and you're adding words that says or affected item. Because what they're saying is, look, any time you have a partnership item that is in any way related to the imposition of the penalty down the road, then you can do it. But another way of saying that, and the way that Congress would have said if it meant it was, courts, you can determine the applicability of any penalty that relates to a partnership item or an affected item. Scalia, I understand that. Scalia, but it is an addition to partnership item. You say, oh, you can't do that, because it would add to partnership items. But the statute does not say just partnership item. It says partnership items, the proper allocation of such items, and the applicability of any penalty in addition to tax or additional amount. It's in addition to partnership items. And it seems to me not enough to say, well, if you interpret that third part to go beyond partnership items, you're destroying the statute. I don't think so. Our point is the one that the D.C. Circuit and the other circuits have adopted, which is that to make this determination, you have to go beyond a partnership item. You have to determine a nonpartnership item in this grant of jurisdiction to the justice system. Scalia, when would you not have to do that if you're applying the third item, the applicability of any penalty in addition to tax or additional amount which relates to an adjustment to a partnership item? That will always require you to go down to the partnership. No. When the penalty is complete based on what the partnership has done, you can determine the applicability of the penalty. You can say all of the elements are met because of what the partnership did, and then later you're only looking to whether or not the partners repeated that error. Here, that's not what's happening. Ginsburg, suppose the government had asserted this penalty under sub 6 for the transaction lacking economic substance, would you be made to say it doesn't make any difference, it's the same, or would you say that under 6, your argument is not applicable to that and the determination could be made at the partnership level? It would, Your Honor. The non-economic substance penalty that Congress passed to cover the situation here solves all the problems. As to jurisdiction, courts could determine it at the partnership level because looking to whether or not the partnership is a sham is a partnership item, and so courts have jurisdiction to do that. And of course, that solves the merits question, too, because Congress actually addressed the situation here. And the merits, instead we have the government trying to fit a square peg into a round hole. I mean, on jurisdiction, before I go to the merits, I just want to talk about the practical consequences of this ruling. It's very significant from the standpoint of the taxpayers. What the government wants to do is funnel all of these penalty determinations into a computational adjustment, as opposed to the deficiency proceeding, which is the default rule under the statute, section 6230. And from the taxpayer's perspective, that has huge consequences. It means that the taxpayers have to pay the refund up front, as Justice Sotomayor recognized. That means that even in disputed penalties, you have to pay all that up front. And then that limits their ability to challenge it. It means they can't go to the tax court to challenge it. They have to do it in a more expedited faction. The default rule is deficiency proceedings. That is where Congress intended these penalty issues of the type that we have here that pertain to nonpartnership items. Sotomayor, let me ask you something. There is no reason to go into a sham transaction except to mistake the outside basis in the individual partnership level. So it's low-hanging fruit, according to the D.C. court, but why shouldn't you be able to pick it? I mean, it's sort of obvious, just as it's obvious that if a partnership item has a miscalculation that the partner is going to include it in their tax return later. That's why we permit the penalty to be imposed up front and to pay the tax up front, because you're making an assumption that it's been included erroneously on the partner level. And I think what you would be doing is assuming a fact necessary to the penalty that outside basis was reported as zero for purposes of finding jurisdiction. And we don't think the Court could do that. The government acknowledges that it's at least possible that the taxpayer in a fit of anger, if they really understood the transactions, would not inflate its basis. It would report a zero basis. And yet nobody would know that in the partnership level proceeding, because the partner's outside basis isn't even before the court, before the IRS or the court in that proceeding. Breyer, again, can I just try once more? Suppose that a person owes a gift tax and what he gave to his children or whatever was in part an interest in a partnership. Now, I go back to my example, because I want to get the my example is that everybody agrees that the 810 million versus 8 million, there's a penalty attached. Well, he doesn't take that into account when he gives the gift. Now, if he did give the gift, it would be sad. He would have to pay a tax on the gift, on his gift tax return. Okay? They assess that on the they would assess that, wouldn't they, even though it's a gift tax return, not an income tax return? Right. I mean, ultimately the Okay. So no matter what kind of return you use, no matter what the tax situation, if the partnership real value makes a difference, you have to put it in, don't you? In the individual. Yeah. Yeah. In the individual gift tax return, maybe it's a state tax return, maybe it's an income tax return. You do, but the partnership So it affects the taxpayer differently. And I'm just saying, why does it matter? That the way this affects the taxpayer is through what you call his outside basis. Why does that matter? Your Honor, every partner's outside basis is going to vary in the typical situation. Yes, yes. But of course, any of my example too, it will vary. Of course it will vary. Some people will use, have no tax to pay, no extra tax, because their income tax that they paid was zero. In fact, the government owed them a refund, so it didn't matter. It varies in many ways. So since it varies in many ways and varies by many returns, it might vary depending upon whether it affected your outside basis or something else. And the fact that it can vary, Your Honor, is one of the reasons why Congress wanted these determinations made at the partner level. And another thing on the jurisdictional question, I don't think the Court could resolve this question looking only to the sham partnership situation here. Sometimes transactions are shammed, sometimes partnerships are shammed, and the jurisdictional question or answer to the question should apply across the board. And yet if you have a situation where you have only a transaction shammed, then even the government would have to acknowledge that basis could be affected in many different ways in that situation. And again, getting back to the point of the partnership, I think it's a sham partnership. Just couldn't the government simply have said that the partnership overstated its basis? It couldn't because, and it didn't, because, again, if you go back to page 186, 169 of the Joint Appendix, everything about these transactions is accurately reported on that form, which is in the partnership return. The partnership actually reported a gain on these transactions. The error comes in at the partner level and is only on the partner return in the situation. And that's why you can't determine outside basis at the partnership level, and that's why you can't determine the applicability of this penalty at the partnership level. It's a bit of a sham. Scalia, I have a second question, which I asked your friend as well. Is he correct that if we rule for you, each partner may have a different result? Because different courts will find this to be a sham or not to be a sham. No, Your Honor, in this sense. If this Court resolves the merits question, then that's that ruling, whether the penalty applies or not in this context, is going to apply to all partners. So that issue is not going to vary by partner. What can happen by partner is different partners may have different outside basis. Even in this situation, my friend acknowledged you could have a partner that nevertheless reports zero as his basis in this situation and not the inflated basis. Scalia, why wouldn't one court say, I don't think it's a sham partnership? Well, that determination, Your Honor, is being made at the partnership level, and we agree that it can be made at that level, and that determination applies to all the partners. There's no inconsistency about that. The only question here is whether the partnership level court can determine the applicability of the basis misstatement penalty, as the government calls it. And it doesn't have jurisdiction to do that because it depends on that outside basis. But I think we're not really going to be able to do that. Roberts, can you say that that's not true because individual partners may respond differently to the partnership determination with respect to the basis? Yes. Some of them are going to put in something else, but somebody may put in zero for a number of the reasons that the IRS's counsel suggested. Yes. And now, I suspect that those will be only in rare circumstances, and I guess that's why the D.C. Circuit said, even though the result here may be obvious, it nonetheless depends on the outside basis determination. Exactly. I think what I understand your friend to be saying is it's not just that it's obvious, but it's ineluctable, and therefore it doesn't depend on the outside partnership determinations. So does your case hinge on the perhaps unusual situations where you have one of these partners having a fit of conscience and decides to put down the real number or has some other adjustment to it? I think largely, yes, but if I can explain that. First, I mean, that presents the low-hanging fruit situation the D.C. Circuit resolved, and we think they were right to say even if you think it's low-hanging, you're forbidden to pick it. Second, here the whole partnership is shammed, but there are certainly cases where individual transactions are shammed. And if individual transactions are shammed, then the outside basis could vary widely based on the individual circumstances of the partners. And so there in that situation, it's not at all obvious or necessarily true that the basis is going to be overstated. You have to look. And again, that's why it's a completely separate determination made at the partner level. Sotomayor, give me a concrete example, because I'm not quite sure about what you're talking about. Well, you could have a partnership, Your Honor, that engages in many transactions, and the IRS would determine that one of the many transactions that it entered into was a sham. That particular transaction was only designed for tax purposes, but other transactions that it engaged in were legitimate. Now, in this case, the IRS is saying that the whole of everything the partnership did is a sham, but in my case, some transactions are okay, some are different. In that case, the individual partners' outside basis, they may have tried to take advantage of the sham transaction, but yet all the other transactions affect their basis as well in the partnership. I'm a little confused on this example. Presumably, it's only if they carried forward, which we're assuming they would have done, carried forward the outside basis, the penalty would have been determined just on that one transaction. No, because, Your Honor, again, the penalty is based on what the individual partner claims is his basis. And that partner is going to be looking to everything that goes into his partnership interest, the cost or investment in the partnership, pertaining not only to the one transaction that we've hypothesized that's been shammed, but many other transactions as well. So you can't conclude either that there's been any misstatement or that any misstatement triggers the valuation misstatement penalty here. If I could talk a little bit about the merits. On the merits, our fundamental question is that a valuation misstatement penalty that Congress devised in 1981 was not intended at all to apply to the fundamentally different situation here, where the government is claiming not that you misstated the correct amount of the value or that you didn't have an accurate amount of the value or the number that you put for basis or value, but that the thing that's subject of the valuation of the basis doesn't exist at all. I mean we know if you look at the pre-enactment history, the post-enactment history, we know that this is not what Congress had in mind. If you look at the pre-enactment history, it's all about resolving a problem of a backlog of cases where taxpayers were misvaluing property, and the tax board had a role to play. Kagan. Kagan. But that's the prototypical case, Mr. Garr. There's no question that that's the central case that, that Congress had in mind. But it doesn't have to be the only case, and they wrote words that seem to be applicable to this case, as well as to the kind of case that you're talking about. Garre, they have basis, and we have context, punctuation, pre-enactment history, post-enactment history, and structure. I'm sorry, you're saying they have text, and you have a bunch of other things. No, not at all, Your Honor, because, not at all, Your Honor, because this is a valuation misstatement penalty. The reference to or adjusted basis comes in a parenthetical subordinate way. And let me give you a hypothetical. One of my associates came up with a good example, I think. If you had a contract for a wedding that provided for flowers or plants in parentheses, you would understand that to mean flowers or plants like lilies or ferns that would accompany flowers in the wedding. You wouldn't read that to include an oak tree in the middle of the reception area. Well, the government's basis overstatement penalty is the oak tree in the middle of the reception area here. The most common situation in which basis misstatements are made, the government acknowledges throughout its brief, is where you misstate the price or cost of a good. And yet, they're moving, which is why the reference to adjusted basis makes sense in the statutory scheme here. It covers that situation. But they're saying you don't need to, it goes far beyond that, not only to the prosaic situation, as they call it, but to a situation where you're not complaining about whether the thing, what the correct number is or what the correct amount is, you're saying the thing doesn't exist at all. I mean, if I donate a painting that I say is worth a million dollars to a church and I put that on my return, but in fact it turns out that I didn't donate the painting, I may have committed a fraud, I may have lied about contributing the painting, but I haven't made a valuation misstatement, nor have I misstated my basis. And I think our position is here that if you look at everything, as I mentioned, the words of the statute, the context on which a basis is appears, the structure, there's a graduated scheme that makes no sense with a zero basis situation, which is essentially a nullity. If you look at the fact that Congress addressed this in 2010, not by amending the valuation misstatement penalty, but by enacting a penalty designed to apply to the situation, the non-economic transaction situation. Ginsburg. So just to be clear, if this, if 6 had been on the books, then you would have no quarrel with the government's position they could do this at the partnership level? Yes, absolutely. That's the way Congress designed it. And the last one. I didn't get the question. If what was on the books? If the non-economic substance transaction penalty that was enacted in 2010 was on the books, what would happen is a court could determine the applicability of that penalty, which is based on what the partnership did at the partnership proceeding, and we would agree that penalty applies. All the problems are solved by what Congress did to address this particular situation. The government is trying to put that square peg in a round hole. And if you add everything up, I think what's interesting about the government's reply brief is it doesn't contest that if there's any ambiguity here, the statute has to be read in favor of the taxpayer. And that's because of the canon that this Court has recognized that tax penalties are strictly construed in favor of the taxpayer. Here, at a bare minimum, there is ambiguity as to whether the Congress that passed the valuation of the statement penalty ever intended it to apply to this fundamentally different situation, where no one disagrees about the numbers reported on the return. Again, if you go to the partnership return, the transactions are accurately reported. If you go to the outside bases, it's true that they reported a loss, but that's because they were following the IRS's rules about how you treat contingent liabilities. So that number is actually accurate under the IRS's rules. That's why the IRS has to come up with a sham to get rid of the property altogether and say that we're going to pretend that it doesn't exist at all. But, again, that's not a valuation of a statement. When the penalty talks about correct amounts, about accuracy, about value, it's trying to get at the number of the thing that it's worth. It is not concerned with a situation in which the IRS is claiming that the property doesn't exist at all. That is a different problem. Congress addressed it in a direct way in the non-economic substance penalty. So this Court doesn't have to worry about this problem being unaddressed. But what it should do is correctly interpret the penalty that Congress enacted, which was on the books when these events occurred, which is the valuation of the statement penalty. It is not the all-encompassing basis over statement penalty. I think if you're going to read one of the amicus briefs, read the Shackle amicus brief, it talks about all the additional situations in which IRS or Congress never applied this penalty to, which would be swept in by the government's position here today. Thank you, Your Honor. Roberts. Roberts. Mr. Stewart, you have 5 minutes left. Stewart. Mr. Chief Justice, Justice Kagan, I agree with your point that on the jurisdictional issue the crucial contested language is, relates to, and the issue is whether the basis over statement penalty here relates to the shamming. How does it not? A partnership item is defined to include legal and factual determinations that underlie the determination, among other things, of income, credit, gain, loss. Okay. Whether there's a partnership at all does underlie the determination of whether the partnership return, which had all kinds of numbers on it, shows anything. That's correct. All right. So therefore, it's a partnership item. Does this penalty relate to a partnership item? I don't want to say that you're right for the wrong reason, so you better be sure I'm right. That is, the the the does it relate to a partnership item? I just told you what a partnership item was. It certainly seems to, because zero is what it relates to. End of case. Well, but it can't be that simple. We have three courts and. Let me pose perhaps a less friendly question. What do you do with your friend's hypothetical? On a tax return, you say I gave a painting to a charity worth a million dollars. And in fact, he did not. And he says what you're doing is you're going to go in and say that wasn't worth a million dollars. It was worth nothing. When in fact what you should be saying is you didn't give the painting at all. I think this is a different situation because the IRS did not determine that the underlying transactions, the purchases and sale of currency options and so forth, didn't occur. It determined that the partnerships were shams. And I think that this is an important point. Well, but if you determine that the partnerships were shams, that's like saying there were no partnerships. There were no partnerships. And if you say, you know, I didn't really give the painting, that means there wasn't any painting. It seems to me they're pretty closely parallel. But what the FPA also said was because there were no partnerships, the transactions should be treated as though they had been engaged in by the individual partner. Maybe it's a frame with a blank canvas. And I think as I was starting to say at the close of my opening argument, it's no accident that partnerships were used to effectuate this scheme, because if the individuals had bought and sold the offsetting foreign currency options, they would have had no tolerable rationale for contending that they were entitled to a deduction for the cost of the long option, but they were not required to treat as income the amount they received from the short option. It would have been absolutely clear that the transaction taken as a whole was a wash. The only way that they could try to create the appearance of a paper loss was by manipulating the rules that govern the computation of basis in partnerships. And so the shamming determination, in effect, was a determination that for tax purposes, you can't try to take advantage of the Helmer rule that says that for computing basis in a partnership, we will ignore the contingent liability created by the short option. The one thing, other thing I would say on the merits as to why we care about this case is that Respondent's argument doesn't just go to, on subsection 3, doesn't just go to basis overstatements that are produced through sham transactions. It goes to all basis overstatements that are produced through legal errors. And I think that the new legislation completely resolves this problem? It completely resolves the specific problem posed by this, almost completely resolves the specific problem. Subsection 6 undoubtedly would cover this case. Now, subsection 6, the trigger for having a 40 percent penalty rather than a 20 percent penalty is slightly different. Under subsection 6, you are, if you disclose the relevant information on your tax return, then even if it's later determined that the transaction lacked economic substance, you would be subject only to the 20 percent penalty. Under subsection 3, you can get the 40 percent if the overstatement is 400 percent or more, regardless of disclosure. But it almost completely covers it. But other other Sotomayor, could you go back just one moment to the practical point that your brother made? Is this issue only about whether you collect the tax beforehand or after? Because he says that they are bound in a partner level proceeding to the finding that the outside basis was, that if it was claimed in the partnership level, it was zero. With respect to jurisdiction, the question simply goes to the allocation of responsibilities between the partnership level court and the partner level court. Now, when he says we are trying to avoid deficiency proceedings, I think it ignores the fact that under our reading, the important legal objections that Respondent has made to the penalty, namely the arguments that are set forth in part 2 of their brief, can resolve, under our theory, can be resolved at the partnership level without prepayment of penalties. Thank you, counsel. The case is submitted.